Mr. Hayward was found by the parole board after service of nearly a quarter century of imprisonment to be suitable for parole in the sense that his release would not pose an unreasonable risk to public safety. In obedience to the statute that mandates that the board set a parole date under those circumstances, the board proceeded to do so, and in fact it did so not once but twice, including once when the board, en banc, sitting similar to how this court is, fully weighed in on the matter and granted parole only for the governor. But the authority to grant parole belongs to the governor. It is not the parole board's power. It is a descendant of the executive clemency or the king's clemency, a derivative of the all common law. Not exactly, your honor. The power vests in the parole board to determine parole and to act as the executive. What the governor has the power to do is review that parole grant and determine if indeed the individual can be safely released without unreasonable risk. So it's a power of review. But it's the parole board that conducts the hearing. There's other constraints on the power of the governor to conduct that review. What if he says, you know, I reviewed the parole board hearing, which didn't happen in this case. This is a hypothetical. Okay. And he says, you know, I really can't find any fault with what the parole board did, but I am in a close election, and I want to seem like I'm tough on crime, and I certainly don't want to take the risk that somebody that I release will go out and pull a Willie Horton. We use an image from the past. And, you know, just says that. Says, you know, I think there's no way to guarantee 100% that somebody who's released will behave. And I just don't find it politically acceptable for me to take that risk given the politics of the state and given what I know my constituents prefer about their safety. What if he did that? Would that violate? What would it violate? Well, let me say, first of all, that's not so much of a hypothetical, Your Honor. And secondly, it would violate the state constitutional provision that vested the governor with the power of review because at the same time it vested the governor with that power, it said that the governor is subject to the same legal restraints and criteria. Where is that? That's in the state constitutional provision. Can you tell us? I'm sorry. It's recited in the panel's opinion, and it's cited. What exactly does it say? What it says. Is this Article V, Section 8B? Is this what we're talking about? Yes, Your Honor. Footnote 3 of the opinion. All right. Let me. The governor may only affirm, modify, or reverse the decision of the parole authority in the basis of the same factors which the parole authority is required to consider. Thank you, Your Honor. That's the critical language we're talking about. And this is what the California Supreme Court has said in Rosencrantz. That's why it was reviewable. Which leads us to this case, which is an AEDPA case. So it seems to me you have to persuade us that there is some violation of a Supreme Court rule that is involved in the governor's rejection of parole in this case. Isn't this all a state issue? It's a federal due process issue because the rule embedded in this. But you're citing nothing but California rules and constitutional provisions. That has nothing to do with the federal AEDPA. That's the state-created right that's at issue. Then the question is, was that right arbitrarily abrogated? That's a federal constitutional question. And one of the necessary ingredients to determine that there was not an arbitrary abrogation is that there be some evidence. Counsel, let's back up to that for a minute. The question strikes me as a little narrower. Under 2254D and Mosladen, we have the power to grant the writ only if the state acted contrary to or made an unreasonable application of a holding of the United States Supreme Court. Now, when I look at the United States Supreme Court holdings, the phrase that you just used, some evidence, comes from Hill. And that's the only one. Hill is revocation of good time credits, basically a prison discipline measure, taking away the good time somebody has, ordinarily in a specific number of days for a specific historical offense. The prisoner is already committed an offense. In Greenholtz and Wolfe and other cases, the Supreme Court has gone out of its way to distinguish parole from good time. And they've said that parole involves many variables. It's not simply an historical evaluation of a prison discipline violation. And it's inherently discretionary, involving a predictive judgment rather than a historical judgment. It seems to me that even if we were to agree with you about California law, and even if we were to agree with you that some evidence ought to be necessary, we would not have the power to grant the writ because of Mosladen and 2254D. All right. What am I missing here?  What am I missing? What you're missing is a whole line of jurisprudence that goes back a century by the United States Supreme Court, which has said an essential ingredient of due process is that there be some evidence. It's not just Hill. That's the culmination. Wait a minute. Some evidence is only in Hill. No, it's not. After nearly a century of jurisprudence, I'd like you to cite me a Supreme Court decision that says some evidence other than the conviction for the initial crime is necessary to deny parole. Okay. There is no case like that, Your Honor. Then why aren't we done under Mosladen? Because Panetti, Williams, and Wiggins all stand for the proposition that IPA, and I'm quoting here, does not prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. And we have the principle that when you have an important liberty interest at stake... That citation is not a citation that says some evidence is necessary to deny parole. That's a citation of a case that says a Supreme Court decision doesn't have to be on all fours to be applicable. Yes. And, Your Honor, I mean, what you seem to be saying, for example, a parolee would not be entitled or he could have his parole revoked without any evidence just on whim and caprice. Well, I don't know if it's whim and caprice. I read the governor's decision. It was not whimsical. It was a very lengthy, thorough examination of this man's crime and his history. Well, then you're reviewing it? The governor said he said it was a really brutal crime, stabbed a man to death 17 times, recovering from two broken arms, spent six months getting it together, all because of an insult to his girlfriend. And then in prison, smuggling dope and smuggling something else. I don't remember what. Alcohol, I think. And running some kind of white gang in prison. The governor gave a lot of reasons. So it's not just whimsical. Yes. Well, many of those reasons were not supported by the evidence. But the issue at this level right now is suppose none of those things were true. Could the governor, as I understand what you're saying, could the governor still have denied parole with no evidence? Right. That's what I'm saying. I mean, Your Honor is giving a kind of some evidence review there. And that's the question. But the governor did. But we said that's we evidently said in the panel decision that doesn't look like some evidence to us. But the governor ran through all that I just summarized. Right. It's not some evidence when the governor says, I find the prisoner is unsuitable for parole, because the psychological reports all saying he's going to go out and present an unreasonable risk, when in fact the psychological reports said just the opposite. Well, they didn't say just the opposite. They said they thought the risk was low because he's over 60. And he had engaged in rehabilitation and reform for over 20 years. Actually, the psychological reports said low to moderate. Low to moderate. Now, if you're taking the accepting that bill, which doesn't use the word some, it says that due process, to quote, the court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence, citing, among other things, Douglas for Berger, a revocation of probation. Assuming that any, the next step up would be some, why isn't a psychological evaluation that says that this inmate, this prisoner, has a moderate risk of committing violence, why isn't that some evidence of danger to the community? Of course, that's not what we have here. We have low, moderate, but because moderate is reasonable. That's on the low end of the scale. The standard for the board or the governor is the prisoner has to present an unreasonable risk on parole. Well, in fact, the record in this case, it seems to me, having looked at both on my own docket and reading the California cases and the range of cases that are coming to the courts now, there's actually more evidence here than there is in a lot of the cases. Would you agree with that? It's hard to compare individual cases. Many of them have no prior record, have a low or very low psychological report, have a lot more education than this guy has while in prison, and so on. And they're still being denied parole. I understand. Even when you have a situation where the, in this case, we have somebody who's served 30 years of imprisonment who has shown reform and rehabilitation over the course of most of that time of 20, 25 years. But why should the federal courts step in under a some evidence standard and be a level of review when we are many, many levels away from the people who are involved more directly? The parole board comes up with this conclusion. The governor then has to review that. Then it goes to the L.A. Superior Court. The L.A. Superior Court has the ability to look at the evidence, not to necessarily see the parolee. But when it gets to us, you're saying in response to Judge Berzon's question, well, it's hard to decide. And we sit here far removed from the process with, under AEDPA, a very, very limited and deferential standard that we have to adhere to. How can we jump in and say, well, you know, in our judgment, this fellow with a moderate risk of violence is entitled to get out on the streets? Because it's reached the level of unreasonableness and irrationality. Can I take this back off to something else? The California Supreme Court has two cases before it now which have been argued and presumably will be decided in the next 60 days or so. If we get beyond the threshold issue in this case, i.e., whether there is a some evidence standard at all, would you suggest that we wait for the California Supreme Court decision? I don't think so because all it is considering is whether there is some. No, but it's also considering some evidence of what? I mean, isn't there a problem here about whether the ultimate evidence standard is public safety or whether the ultimate evidence standard is one of the criteria that's in the regulations? That's what I understand the dispute to be, and it makes a big difference. Well, the statute is very clear. It's public safety. And that's what the Supreme Court has said from Rosencrantz to Dannenberg, that the ultimate standard is public safety, and that's what makes all the difference. Yes, but that's what the California Supreme Court is going to tell us, is that when we're looking at the statute, as a matter of State law, is it sufficient to keep somebody in parole that the crime was egregious and so on without any further prediction as to current safety, or isn't it? And if we don't know the answer to that, how can we decide a some evidence question? I don't think the California Supreme Court is going to be deciding that in particular. I think they're going to be deciding whether there is some evidence under the statute, and the statute requires public safety. Some evidence of what? Some evidence of what? Well, that's enforcement, though. So getting back to the question I was asking earlier, you pointed me to a State law provision with which the governor acts, and it seems to me the question then is whether or not that statute, State statute, creates a federal liberty interest, and if so, what are the contours of that interest? Now, in Wolf, you knew that there was a liberty interest because these people had these credits that they were entitled to have unless there was a showing, factual showing that they misbehaved or something. So this was time off their sentence, real days off their sentence that they would get unless there was some fair proceeding to determine whether or not they'd lost them. I'm still stuck where I was at the beginning of the argument trying to figure out why there is a federal liberty interest here and sort of connecting to the questions you've been being asked over there by Judge Berza and perhaps by Judge Fischer, if I understand correctly. If so, what are the contours of that liberty interest? Because a liberty interest, the federal liberty interest is cabined, is shaped, is given life by State law itself. It's not created by federal law. It is State law that creates it. So where is the liberty interest here, and what does it look like? Okay. The liberty interest is in the statute which says the board shall set a parole date unless public safety considerations show that he cannot, that a parole date cannot reasonably be set or safely be set for him. That's not exactly what it says. That's not exactly what it says, and I've been curious about what it does say. Because what it does say, unless it determines that the gravity of the current convicted offense or offenses or the timing and gravity of current or past convicted offense or offenses is such that consideration of the public safety. Right. So the focus seems to be on the crime and the criminal record. Then the regulations seem to depart from that entirely, and I don't know why that is. And the temporality of it, though, because it says — As to the second, but not as to the first, not as to the gravity of the current convicted offense. Because whether a date can be set at this time or whether we have to wait a longer time. Because you're entitled to the periodic consideration of parole. Counsel, let me ask you a question that I think proceeds from the concerns Chief Judge Kaczynski and Judge Berzon have raised with you. The statutory phrase, gravity of the convicted offense. I want to give you a hypothetical case that completely eliminates the predictive concern. Here we've got some evidence, such as the psych report, moderate risk, and the repeated misbehavior in prison. Suppose you have none of that, but you have the worst possible offender. Say you have Adolf Eichmann, and you eliminate the international aspects. You have an Adolf Eichmann who is running a militia that murdered people because of their ethnicity. An enormous number of people. He finally got caught. And after he got caught, it turned out he was a new man. He had repented. When they caught him, he was running a charity for Jewish orphans. He was a wonderful man. And in prison, he became a prison preacher, telling people how wrong he'd been and how wrong that sort of conduct was, and he was a model prisoner. Would they have to grant him parole, disregarding the gravity of his offense, just because they could predict that he's not going to do it again? The prediction of recidivism and everything goes to the obligation to set a parole date. So, yes, they would have to set a parole date because he would not present a public safety risk. Now, why? It looks to me when I read the statute as though they don't, because if the gravity of the convicted offense weighs heavily enough, it looks to me from the statute as though he does not have a right to get out, no matter what the prediction is. But the gravity is related to the public safety. Let me go on, because, Your Honor, I think you may be— I'm looking at the words, and I don't see how the gravity is related to public safety. There's a factor of sentencing reaffirming societal norms. Basically, if you don't punish a terribly evil crime seriously enough, you're announcing to society that the victim's lives are not worth as much as the criminal's. Okay, well, let me speak to that, Your Honor, because California does have a sentencing provision that provides for life without possibility of parole. So presumably this hypothetical person would get that sentence. But let's say— My iquan had a plea bargain. Okay, let's say he got a plea bargain. So he got life. That was where the State promised him that the setting of a parole date would depend upon the showing of redemption and rehabilitation that you said is there. But keep in mind that the setting of a parole date in California does not mean you're entitled to immediate release. There's a two-prong system. One has an elaborate system set up. The setting of a parole date is just supposed to give you a predictability, something to continue your good behavior for and everything. But once they've determined you can be released without public safety, then there's a whole complex matrix and everything to set the appropriate punishment. That release may be many, many years in the future for somebody like the hypothetical. He may never get out because he has so many murders that the years pile up. Let me ask you about—let's assume that you're right, that it has to relate to public safety. Why does the California statute have to be confined to public safety from this man? Why couldn't it be interpreted by California to mean public safety generally? If we don't take murder seriously enough, if murderers have a hope of getting out, then even though the ones we let out when their medical costs start climbing in prison aren't going to do it again, other people won't be as scared to commit murders. Because the premise—that was all decided by the legislature when they set up— But isn't this exactly what the California Supreme Court is going to tell us when it answers the question in Chaputis, which is, is the inquiry limited to whether the reasons stated have a factual basis, or should a reviewing court also examine whether the evidence supports a finding that the inmate presents an unreasonable current risk of danger to the public? That's the question on which is granted a hearing and is heard argument. Isn't that going to answer Judge Kleinfeld's question when we get—when it's answered? It may. It may. But I think the important point— And the difference would be significant in deciding the nature and extent of a federal liberty interest. It's one thing to say you have a liberty interest cabined by historical facts, or perhaps even a sort of prediction about the future. It's another thing to say you've got a federal liberty interest based on moral judgment about the badness of your conduct. If it's essentially what California has as a statute that says, look, we're going to give you life without parole, and the judge and the jury are going to make certain decisions right now, and then we're going to project forward 25 years from now, and then we're going to have another decision maker take another look at the badness of the crime, and make another determination whether, in light of the circumstances then existing, it is still the kind of crime that deserves further imprisonment. That wouldn't create much of a federal liberty interest, would it? But you still have the liberty interest of whether that would just inform the due process right. You would still have that right. You would still have to have some factual basis that would support what you're calling kind of a moral normative judgment. You could have something that starts a process many years down the road that does not give you a concrete enough interest to create a liberty interest. Let's say, for example, the statute were, again, quite different from this. It said you've got 25 years before you're allowed parole. At the end of that process, the governor will consult his political future and decide whether it is safe for him to let you out of prison. Let's say that's what the statute said in so many words. That's what your claim is, in fact, what's going on. That would be up to the state. But what it would not give you is anything concrete enough on which to base a federal liberty interest. You have a hope. You have an expectation. You can live with sort of the Shangri-La idea that maybe something will break your way. But it would not be enough to create a federal liberty interest. But the plain reading of the language, and as interpreted by the California Supreme Court already in Rosencrantz, it reads that statute. It would be a lot stronger if the Supreme Court comes back and says what the governor is supposed to do is to determine facts. If the California Supreme Court says part of this process turns on determination of historical facts, then that looks a lot like Wolf, whether it's parole or probation or whatever. If this is a state entitlement to the correct determination of historical facts, that looks a lot more like a federal liberty interest than if it's something much more nebulous. Well, as the court said in Rosencrantz, a prisoner has a legitimate expectation to a parole date unless it's determined that his release would pose an unreasonable risk. The legal events here happened in 2003 when Governor Davis was governor. Has Mr. Hayward been to the board since that time? Mr. Hayward, I believe, has been to the board, but that's not in the record. I'm trying to get it. Is he still in prison? He is in this courtroom right now. He's been released pursuant to the panel's decision and has been a conforming... Has Governor Schwarzenegger had occasion to pass on parole? Not since then. One of the things I was... According to the state, it still has every right to imprison Mr. Hayward. He has not been granted parole again? No. Counsel, as to the liberty interest discussion, are you finished answering that question? But he hasn't had a parole consideration hearing, as he's supposed to have periodically. So at the very least, he should have that before he would be returned to prison at this point, is all I was going to say. I'm just trying to put the federal liberty interest issue in perspective. We've been focusing on the statute and the Supreme Court cases of California and so forth. But what do the federal Supreme Court decisions tell us about them? For example, Greenholz, Sandin, Castle Rock. I read those cases to suggest that there is no liberty interest in parole as such. Now, where am I misreading? Well, Greenholz and the Montana case, Allen, both found that there is a liberty interest in parole. Because in that case, the statute was a much more nebulous one than in our case where, boom, it's public safety, it's black letter. There, it depended on whether the interest of the prisoner and the interest of society would be benefited by the release and a couple of other things. The court found, nevertheless, given that discretionary nature of the decision, you still had a right to a fair determination and to procedural protections. What about Sandin and Castle Rock? They have nothing to do with parole. Castle Rock, I'm not even, I can't say I'm familiar with, Your Honor, but Sandin and those cases don't deal with parole. They deal with prison regulation for internal prison management. Can I ask one slightly off-the-side question, maybe? Does it make any difference to our federal liberty interest analysis, either as to whether there is one or as to whether the sum evidence rule applies, that California, its California Constitution has decided that there is a liberty interest and that there is a sum evidence rule? Does that itself give rise to a liberty interest, so to speak, which then leads to, informs our conclusion? I think not perhaps their conclusion that there needs to be sum evidence, but their conclusion that, yes, there's a legitimate expectation here because the prisoner is entitled to a parole date unless the court has said so. And under the California Constitution, if not under the statute, because the courts have said so. Right. But I think it's important in dealing with the IPA issue and whether a principle has been clearly established, they came up with the sum evidence standard as a result of United States constitutional jurisprudence, first in the power. That's a different question than what I'm asking. You're right. What I'm asking is, does the fact that they have done it, whatever they have done it, itself create a liberty interest, whatever the statute itself might have done? In other words, they have said you now have this right under the California Constitution, whether you have it under the statute or not. So for federal purposes, isn't there a liberty interest because there is one under the California Constitution? There is one under the state statute, I think. But whether you have review for sum evidence under the state constitution, I think it's just, I don't know whether that in and of itself then gives you a federal right to equivalent. Thank you. Your time is up. We'll hear from the government. Good morning, Your Honor. I'm Jennifer Neal, Supervising Deputy Attorney General on behalf of the Respondent Appellee. There has been much discussion here this morning of California's parole scheme, which is important in part for this case as determining whether the state has created a federally protected liberty interest. However, where I depart from the analysis of Petitioner's Counsel is what process is due under the federal constitution in the parole context should a liberty interest be found. Because this court is constrained by AEDPA in determining the process due. Your position is that even were we to find there is a federal liberty interest, WOLF doesn't apply because WOLF dealt with prison credits whereas this deals with parole. Correct Your Honor. I have some difficulty following that position. I guess under a very, very strict reading of Mussolini, one might say that, and maybe that's your best precedent. But it seems to me once you, I mean ultimately what's at stake for the prisoner and for the state is the number of days this man serves behind bars versus the number of days this man serves in prison. He has left in his life to live on the outside. It's a zero sum game essentially. And in WOLF the question was when do they get released from prison based on certain legal processes that happen that are created by state law but nevertheless take on a federal character because they create a liberty interest. Why should it matter whether the scheme happens to be called prison credits, the scheme that creates a liberty interest as opposed to parole. If in fact it does create a liberty interest and that liberty interest involves days out of prison, days spent in, out of bar, in private and civil life rather than in prison. Why should the particular name matter? Your Honor, as to whether a liberty interest is created or as to the process. No, no, we have assumed that liberty interest is created. You're saying even if a liberty interest is created it doesn't matter. That was your opening shot. Yes. You bravely chose the hardest part of your argument to address first. Which is, you know, it's good because obviously there are other parts of your argument that you have. You could say there's no liberty interest and so on. But what I heard you say is even if there is a liberty interest here, Ed Powell precludes from granting relief because WOLF involved a different kind of scheme. Even though this scheme also creates a liberty interest. You're not conceding it does. You're assuming it does. And even though the two liberty interests are exactly the same in the sense that at the end what you get is a prisoner who's either in prison, not free, or out of prison, free. And how would you justify that, which I think is the hardest part of your argument, Your Honor, the interests are not the same. And the Supreme Court has indicated that the interests are not the same. That in parole an inmate has a mere hope of release as to a greater entitlement. No, but we are talking now, you are now talking about whether there is a liberty interest. And you may say the scheme is different from the prison context in that whatever he is given doesn't mature to a federal liberty interest. And if you want to talk about that, we can talk about that. And I think that's a much better argument. I'm sorry, it's a much easier argument for you to make. But what I thought you did is you boldly stepped up to the lectern and grasped the catapult from the business end  to say, assuming there is a liberty interest in both, still, Ed Papp precludes review. If you want to step back from that argument, that's perfectly fine, but that's what I heard you saying. Even, assume a liberty interest, you still can't do anything because we don't have a parole case. We only have a pre-release case. Wolf is a good time crisis case. Is it a probation or parole? Parole, your honor. And we do have a parole case. So even though there is a federal liberty interest, which you have assumed by hypothesis, we can't do anything. Wolf does not teach. Well, Greenholz is the clearly established United States Supreme Court precedent with regard to parole and the process due should there be a liberty interest found in parole. Okay. So this court can act. But how do you apply Greenholz? There was no issue in that case regarding the motive whether there had to be any evidence. I had asked a question about how would she apply Greenholz, which may tie into your point, Judge Berzon. Well, Greenholz, the Supreme Court has said that if there's a liberty interest due process, federal due process is satisfied so long as the inmate is given an opportunity to be heard and a statement of reasons why he fell short for parole. The Constitution, the Supreme Court said, requires no more. All right. Suppose the statement of reasons says the reason I'm denying this person parole is because he murdered five people and that shows he's really egregious. And, in fact, he didn't. He only murdered one person. If there is a factual error in that, it's already actually been reviewed by the State Court. But Greenholz says so long as he has the protections, that's sufficient to protect against an arbitrary decision in the parole context. Well, I'm hypothesizing a situation where it wasn't. It got all the way through. It gets to us. In fact, there's just no evidence of the reason, really no evidence of the reason that was given. Federal Supreme Court law does not require any evidentiary sufficiency to support a decision. And so until the Supreme Court speaks, this Court is constrained under AEDPA, and the State Court's decision would stand in that regard. Because the Supreme Court set up a system where he's entitled to a hearing, he's entitled to reasons, but if it's a total arbitrary denial because there's absolutely no basis for it, he has no liberty interest in that. He would have no relief under AEDPA, under Federal habeas. The Supreme Court said that these protections are enough to protect against arbitrary decision, but there might be errors. It said it doesn't protect against an error-free determination. What do you do with the passage that I read from Hill? I'll read it again. In a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence and cites, as I say,  Your Honor, the Supreme Court did say that in Hill. However, when it says a variety of contexts, it did not enumerate parole, and it does not apply to that decision. So is your position that clearly established Supreme Court law has to involve the specific factual context, that the due process statement where the strings cite a variety of due process contexts, that we can't look to that principle and decide due process where there's a liberty interest involved, which you're presumably conceding for purposes of argument at this point, that somehow the Supreme Court has to say, and what we mean by that is it also applies to parole, then it's clearly established? Yes, Your Honor. Okay. Can you tell me why Mr. Hayward hasn't been back to the Board since I have June 2003? He has been back to the Board twice, Your Honor. In November of 2005 and November of 2006, and he was given denials at both of those hearings. By the Board? By the Board, yes. The Governor hasn't had occasion then to pass on? No, because he hasn't had another Board grant since it was before this Court. Thank you. Is this case moot by virtue of the fact that he's out? What habeas relief can we grant at this point? No, Your Honor, he has not been paroled by the state, so he is still subject to reincarceration should the state prevail in his proceedings. He was released and is under federal supervision because of a panel decision of this Court, so he's not been found. So he's under what, some sort of federal constructive supervised release? Yes, Your Honor. While serving a state prison sentence? Yes, he's under federal pretrial services supervision out of the Central District. Okay. Do you agree with counsel that California has not, or California has suggested that there is a liberty interest in California? No, Your Honor. There is no liberty interest in California, as explained in Inouye Dannenberg, in being found suitable for parole, which is what counsel argues. I don't understand that argument. It seems to me California has said quite clearly in Rosencrantz and Dannenberg that there is, at least under the California Constitution, a liberty interest that gives rise to procedural rights and also to a sum evidence rule. Yes, Your Honor. That right is to consideration for parole, not in ultimately being found suitable for parole or being released. I don't understand what that means. If you're considered, then there's either a yes or a no answer. Your protections are in being considered. There is no right to be found suitable. And the Court has said that in Dannenberg. What's the sum evidence rule, then? The sum evidence rule is one of California's procedural protections that they have afforded to it. Right. As to the suitability question. As to suitability, there's no right to be found suitable. Of course there's no right to be found suitable, but there's a right to be found suitable or unsuitable according to the standards that apply, and that's what California has held. Which is the right to be considered and found suitable or unsuitable. It doesn't mandate that an inmate will be found suitable. Well, the California Courts of Appeals certainly don't understand that. They've been granting sum evidence review, and they've been releasing people for lack of any evidence. Yes, and that's okay under the California Constitution and the California rules. It doesn't mean that the inmate has a right, though, to be found suitable. Well, isn't there a condition? You don't have a right to be found suitable, but there's an if there. I mean, reading from your own submission, it can be held if it finds that circumstances of this commitment offense continue to present a risk of public safety. But there is that if. If there's no such finding, then presumably he does have a right to be found suitable. If ultimately the parole executive went through the criteria, the regulations, and the penal code and found and concluded there is no risk to public safety, then yes, at that point the inmate would be found suitable. But that's what a liberty of interest is. It's a right to have a mandatory set of rules apply that come out one way if the rules come out, if the facts come out one way and another way if they come out another way. I mean, that's sort of standard. Right. The way California's penal code and regulations are written, there is no set of facts that mandate the board or the governor to not want to make. So why are the California courts of appeals so confused about this and the California Supreme Court? Well, the courts of appeal may be confused, which is why there are cases pending with the California Supreme Court right now. What is your position on how we ought to regard those cases? Is there any point in our going ahead with this decision at this point? Yes. Those cases would only be relevant as to the creation of a liberty interest. And in In re Lawrence, it's possible that the California Supreme Court will speak more clearly as to whether they feel that this statute and the regulations create a liberty interest, because that was implicated in Lawrence. But is it also relevant to whether if there's a sum evidence rule, what there's sum evidence of? No, Your Honor, not for Federal review, because under AEDPA, this Court is constrained to what the United States Supreme Court has said. Well, I understand. If we disagreed with you, it would be relevant. If we thought there was a sum evidence rule, then it would be relevant. I disagree, Your Honor, because if there was a sum evidence rule, this Court would still be looking at to what the Supreme Court has said the sum evidence rule is, which they did in Hill. No, but it's obviously informed by what the State law is, what you have to have sum evidence of. In other words, it still matters what the State substantive standards are, and that's what they're going to tell us, at least in part, in these cases. But how could we tell that it was unreasonable under AEDPA, no matter how the California Supreme Court answers that question? Wouldn't we have to defer to it under AEDPA in the absence of a U.S. Supreme Court decision? Yes, Your Honor. We would have to defer to the factual findings of the California Court. And at this point, the United States Supreme Court has not said that sum evidence applies or told courts how a Federal sum evidence review would apply in a parole context. So in the absence of any Federal law, this Court would have to defer to the State Court. I still haven't persuaded me why AEDPA would block our review under the standard of Wolfe if the kind of evidence involved were exactly like that in Wolfe. Is it simply because this is called a role rather than – I don't know. Well, Your Honor, I think it's false. Explain to me why. Yes. The Supreme Court in – Even if it looked – in your view, even if it looked exactly like the kind of thing the governor was doing was exactly what the board was doing in Wolfe, which remember was a State case, right? Right. It was examining exactly the kind of same evidence. You would say, well, it's too bad. That was Massachusetts. This is California. This is – that was good time credit. This is parole. They are different. Is that the State's position? Yes, they are different, Your Honor. In Moosladden, Landrigan, and Van Patten, the Supreme Court has said you cannot import a test from one set of circumstances to another. So tests that the Supreme Court has set up that govern in the prison disciplinary context or the revocation of good time credits – That's the French system or the continental system. There's no precedential value to anything. Under the common law system, we always work to some extent by analogy, and no two fact situations are exactly the same. And if we apply the Moosladden that strictly, we'll say, well, you know, it's a different case. That was Moosladden. That was Massachusetts. This is California. You know, there are always distinguishing factors. It seems to me that even after Moosladden, there is a core of similarity which you could have, even though there may be a lot of extraneous facts that are different. And what strikes me as similar about the two schemes is no matter what you call them, is that they are both determinations as to whether somebody does or does not get out of prison based on some factual – and again, we'll see what the California Supreme Court says it is – but based on some factual determination made at the time of release. Why isn't that similar enough to say that despite that point, we are bound to follow – Well, Your Honor, I have two responses to that. The first would be, certainly we're not arguing that you cannot apply a Supreme Court test to a different set of facts. So for example – You sound a lot like you were. We're not. So let me clarify. For example, in a prison disciplinary context where the Supreme Court has announced a test of some evidence and the protections in Wolf, federal courts or the Supreme Court do not need to rule on every factual circumstance regarding prison discipline. You say, look, he must behave in prison. There's evidence he must behave in prison. Well, here it says, the governor says, look, he misbehaved in prison. He was in a prison gang, this other thing. And let's say it turns out there's zero evidence. And again, I'm going beyond the facts of this record. We look at it and say all the things the governor says about why he is not releasing the guy are just not true. They don't exist in the record. He was not in a prison gang. There's no evidence he was in a prison gang. There's no evidence he was in a prison gang. Whatever all the things are. And again, this differs from the facts in this case. I understand. But let's say that were the record. Why wouldn't this be just like Wolf? Why wouldn't this be just like Wolf? The decision maker then says, no, you don't get out of prison because I've made certain historical findings. We look at it and those findings are just not supportive. Wouldn't Wolf require us to release the guy? No, Your Honor. The Supreme Court has not imported a sufficiency of the evidence test into parole decisions. What about more generally? Let me ask you about some language in Greenholz here. I want to know how it applies to California. In Greenholz, when the Supreme Court distinguishes parole from good times, they quote with approval a remark by Judge Henry Friendly, there is a human difference between losing what one has and not getting what one wants. And then the people, it was a class action, the people who had unsuccessfully sought parole complained that they were not permitted to hear adverse testimony, they were not permitted to cross-examine adverse witnesses. And then in their conclusion, in their holding, the Supreme Court says, the Nebraska procedure affords an opportunity to be heard, and when parole is denied it informs the inmate in what respects he falls short of qualifying for parole. This affords the process that is due under these circumstances. The Constitution does not require more. Now, I have two questions about that. First of all, does California give the inmate an opportunity to be heard, and when parole is denied does it tell the inmate in what respects he falls short of qualifying? Yes. And second, is there any factual determination that if made by the parole board, would create an entitlement to release under California law? No. So you were in Greenhalgh's to say, the passage that Judge Clamp will just read to you is, the prisoner's entitled to a hearing, and he's entitled to be told why not. Right. And even if what he's told is a total lie, has no support at all in the hearing that they just held, total fabrication, that's good enough. That's what the pregnant conclusion in Greenhalgh's is, he's entitled to be told a big lie, or the truth, or a fairy tale, or to be read a passage from A Tale of Two Cities, and that's how you read Greenhalgh's. You don't think implicit in what the court was said is, he's entitled to a hearing, he's entitled to be explained why, and he's entitled to be explained truthfully and supported by the record, given a statement that is both truthful and supported by the record of the hearing. You don't think that's what they were really saying there. That's certainly not said in Greenhalgh's. But what about the more general due process principle, of which Greenhalgh is a part and Wolfe is a part, that what you have, if you have a right to due process because you have a liberty interest, is a right to a non-arbitrary decision, of which the hearing is a protection and the statement of reasons is a protection, but an implicit necessary protection minimally, at a minimal level is some evidence, not no evidence, and not lies and not fabrications. I mean, isn't that just implicit? There are a long line of cases about due process in various areas that say that's just implicit in the concept of due process, a non-arbitrary decision. And the court here, the Supreme Court has said that for the parole context and with the minimal interest that an inmate has in parole, the two Greenhalgh's protections with parole. So your answer is no. In other words, that even though in every other time the courts ever addressed the question of whether due process or non-arbitrariness includes at least some evidence, in this instance there doesn't have to be any. No. There's no remedy for the outcome of the right that you do concede. As Judge Kulinski said, you get the hearing, you get a statement of reasons, all false, no remedy, but it will give you something to shoot at. That's what Greenhalgh's is concerned. And you can improve your behavior in prison even if what they've said is a total fabrication. That's what Greenhalgh's is the sum of. And we ignore the statement of Hill which says in a variety of contexts when you have been given a liberty interest at least there has to be some evidence or it can't be absence of any evidence. So you just think that that doesn't transfer. Right. And the dissent. Can I move on to just one clarification then on another area? You suggested that the liberty interest, and I want to make sure I'm understanding it correctly, is that if in the California parole system the parole board and the governor concur that you are entitled to a parole date and they concur that in their judgment for whatever reason that you're not a danger to society and then you don't get released, that is the liberty interest and that's the only liberty interest that's created. Yes, at that point there would be the liberty interest. So you would have a remedy at that point to come in and say you have violated my right because you've cleared the groundwork, but there's no way to challenge the groundwork if it's unreasonable, arbitrary, capricious, whatever. If the governor says I don't care if the parole board found him to be no danger to society, no murderers getting out on my watch, I don't care what they do, that's unreviewable. By the federal court. Certainly that could be challenged in state court and it has been. It all gets back to how we define the right. Isn't that the answer to Chief Judge Kaczynski's question? In the good time credits the statute created a right for every year of service you get so many days of good time credit if you keep your nose clean in prison and you accumulate those just like dollars in the bank and the government can't take that away from you without granting you the due process rights that were recognized in Hill. But here in parole the liberty interest to the extent there is one is a mere expectation. It's a hope that you're going to get parole. Judge Kleinfeld's quote from Judge Friendly. And that's the distinction in terms of what process is due. They're not the same. Isn't that what we're going to find out? I mean that's one possibility. But might the California Supreme Court not tell us the difference in the pending cases? You know more about the pending cases. This is not a challenge. This is really a question. My impression from what I heard is that the California Supreme Court might very well say that the kind of finding that they want is much more like Hill than in Hill than it is something that creates a mere expectancy. I don't know. You tell me. There's a chance that the state Supreme Court in Lawrence may speak directly to whether they intended through the state's parole scheme to create a federally protected liberty interest in parole. And wouldn't, if that is the case, wouldn't the prudent thing for this court to do, and in deference to the state processes, wouldn't the prudent thing for us to do is to hold the case in abeyance? And since it is a state scheme and the state's highest court now has it in consideration, wouldn't it be both a matter of wisdom and comedy for us to stay our hand and wait and hear what the Supreme Court of California has to say? That might be a wise choice as to the liberty interest complaint. Counsel, would the state oppose that? Would I oppose that? No, Your Honor. It should be decided. Believe me, I'm not trying to put you on the spot. If you need to check with anybody else, but if you can speak, the state would not oppose holding abeyance pending hearing from the California Supreme Court. No, Your Honor, and their decision is due no later than September 2nd, so it would not be a long time. Which case should we wait for? In re Lawrence and in re Chaputis were both argued on June 4th. How do you spell the other one? S-H-A-P-U-T-I-S. You will provide us with a supplemental. May I ask a question? I think Judge O'Scanlan had a question that I cut off. Well, it's on another issue. The red brief raises the jurisdictional issue. In other words, there's no COA in this case. Are you suggesting that perhaps we should consider overruling White v. Lambert? I think this case does present the opportunity for the court to revisit whether a COA is necessary for inmates who are challenging parole. The Ninth Circuit goes against the weight of authority from other circuits who do require a COA in similar circumstances, and the language of 28 U.S.C. 2253 specifically says a COA is required where the detention complaint arises out of process issued by a state court. Of course, we can grant a COA just sitting as we are. Correct. But in terms of our process, I'm just wondering whether Chief Judge Easterbrook's analysis that what was really going on was that Congress was trying to narrow the number of cases that can come to federal court in this area. Is that your point? Yes. And I'm certainly, I'm sure the court can pull up its own caseload statistics based on the Attorney General's statistics. All right. Thank you. Judge Bozon, I have a question. At some points in your brief, you seem to be arguing that Greenhalgh's wasn't good law anymore. Have you abandoned that position? No, Your Honor, we have not. But Greenhalgh's, so your position is that — Excuse me. I did not — — that Greenhalgh's was not good law anymore. In other words, would you agree that under Greenhalgh's, there is some sort of liberty interest under the California statute? No. Why not? Because — It says shall, it has criteria, it's at least as specific as the statute in Greenhalgh's. So if Greenhalgh's applies, what argument is there that there's no liberty interest under California law? If Greenhalgh's applies, unlike the Nebraska statute that was at issue where the state Supreme Court had not commented on its statutory scheme, here in Dannenberg, the state has. All right. Well, let's say we disagree with you about Dannenberg. I mean, I just don't understand your Dannenberg argument. I really don't. So the argument is that the California Supreme Court has said there is no set of circumstances for the board or the governor to consider that mandate release, that mandate suitability. You don't get to the shall normally until the second step of the parole process. Well, that's true. You don't get to the shall normally, but you do have a set of criteria governing. All right. So let's back up a minute. Let's agree to disagree as to that. You also suggested at some points, however, that Greenhalgh's is not good law because of Sandin. Now, don't we, until it's actually overruled, have to follow it? It's a bit confusing, Your Honor, because certainly in Wilkinson v. Austin, the Supreme Court has said that Sandin abrogated Greenhalgh's methodology for determining a liberty interest. Now, the court itself since then, the Supreme Court, has applied Greenhalgh's and Sandin in a case looking at Ohio's clemency review. So this may be an issue that actually needs resolution by the Supreme Court. So we couldn't do that. We would have to assume that Greenhalgh's is still there. That seems fair to me that we do. I think the court could go either way since the Supreme Court has said that Sandin abrogated Greenhalgh's methodology for determining a liberty interest. But it never did in Greenhalgh's reach the parole question, did it? It wasn't parole. In other words, the Greenhalgh's court never determined parole. It talked about procedural rights, but never held that parole was required or was mandated. Correct. It spoke to the constitutional protections if a state does create a liberty interest in parole. Thank you. You will be good enough to provide us a 28-J letter, or if you prefer, or you can write down the—do we have gum sheets still? No, I guess afraid not. Would you be good enough to provide a letter to the clerk with information on those two cases? I think we know what they are, but just so everybody is on the same page. Certainly, Your Honor. Thank you. Thank you. We used up all of your time, Mr. DeSantis, but if you would like to take a minute for rebuttal. But remember, cases are often lost on rebuttal. You can go ahead. I'll definitely take more than one minute. I just wanted to pick up on the notion of what the Court said in Hill about a variety of contexts in which the sum evidence standard applied to any kind of important liberty interest. And another one of those contexts was the right to practice law, which required a finding of current fitness. And I bring that up because it's much like the finding here, because the Court in that case— Felons, lawyers— Excuse me, Your Honor? Lawyers, felons. In fact, I was going to say, I'm ready to give up my right after today's argument. But what it said was that the concurring opinion emphasized the fact that you're talking about an exercise of delicate judgment, an expression of intuition of experience which outruns analysis and sums up many unnamed entangled impressions. You know, current fitness has shadowy rather than precise bounds necessarily implicating what we are called subjective factors. And so even though that is analogous to the kind of parole decision, the Court found that sum evidence applies to that kind of decision. Do you oppose our putting this case in abeyance to await the pronouncement of the California Supreme Court? I don't, because I suppose it is possible that what the Court says may inform the actual standard. So you do not oppose? I do not oppose. Okay, thank you. I just wanted to know the position of the parties. I, of course, have no idea of knowing what we will do, but I just wanted to make sure I knew the position of the parties on this issue. Thank you, counsel. Okay, thank you. This argument stands submitted. We are adjourned.
judges: Kozinski, O'scannlain, Kleinfeld, Thomas, Silverman